UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY MACK on behalf of herself and others similarly situated, | Civil Action No. 1:11-cv-9008 |
| Plaintiffs, | Judge Kim (by consent) |
| v. | |
| GENERAL MOTORS FINANCIAL COMPANY, INC. f/k/a AMERICREDIT CORP., | JURY DEMANDED |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant General Motors Financial Company, Inc. f/k/a AmeriCredit Corp. ("AmeriCredit") hereby opposes Plaintiff's Motion to Compel, filed on April 16, 2012. As described in detail below, the Motion should be denied in its entirety.

## I. INTRODUCTION

Plaintiff's Motion to Compel seeks to justify a wholesale fishing expedition on AmeriCredit in an effort to manufacture a class action where none exists. This case arose because a telephone company reassigned the telephone number of AmeriCredit customer Jorge Camacho to the Plaintiff, Shirley Mack. Mr. Camacho properly disclosed the telephone number to AmeriCredit on a credit application statement.[1] Mr. Camacho became delinquent on his car payments and AmeriCredit attempted to contact him at the phone number provided. It is Plaintiff's contention that she received calls on her cell phone number in an attempt to collect on Mr. Camacho's account and in violation of the Telephone Consumer Protection Act, 47 U.S.C. §

---

[1] Tellingly, Mr. Camacho is not a party to this action.

227 ("TCPA"). AmeriCredit has provided discovery sufficient to determine whether there was a technical violation of the TCPA with respect to the Plaintiff. But, Plaintiff cannot extrapolate her individual claim into a class action, and has not met even her most preliminary class certification burden.

This case cannot be maintained as a class action for at least three reasons.

First, AmeriCredit does not engage in the types of predatory dialing practices with which Plaintiff's counsel is clearly familiar, thus, it has no way of ascertaining a potential class. It is AmeriCredit's practice to only call cell phone numbers that were properly obtained through loan financing documents or other customer information. *See* Affidavit of Kyle Kinley in Support of Defendant's Opposition to Plaintiff's Motion to Compel, dated April 30, 2012 ("Affidavit"), at ¶2. This fact alone demonstrates that Plaintiff's class, which is defined to include persons called "where defendant obtained the phone number it called *through some source other than directly from the called party*" cannot be ascertained. *See* Complaint, Doc. #1, at ¶21. Moreover, absent a consumer complaint like the instant action, AmeriCredit has no way of replicating through discovery situations where its customer telephone numbers were reassigned by a telephone carrier. AmeriCredit does not employ skip tracing or other methods suggested by Plaintiff to obtain telephone numbers. *See* Affidavit at ¶2. It simply and selectively calls the numbers in its customer database for collection purposes. Thus, absent the filing of a complaint or other formal grievance against AmeriCredit, the company's records reflect that all numbers dialed were properly obtained from its customers. *Id.*

Second, any request that AmeriCredit provide discovery regarding the purported class would not only be futile, but prohibitively burdensome. AmeriCredit has more than 1 million active accounts. *See* Affidavit at ¶4. Even if AmeriCredit could somehow provide information

regarding customers who received a call on their cell phone without consent, which it cannot, any attempt to obtain such information would likely require a manual review of all active accounts. *Id.* Assuming that roughly 20% of accounts are delinquent per month and conservatively estimating that AmeriCredit only had to review 200,000 accounts for a given year, it would take one person 16,666 hours to conduct the review, or 1.9 years. *Id.* This burden would greatly increase for a review of the entire statutory period. *Id.* Moreover, the review would have to be conducted with the clairvoyance to know that a number provided by a customer did not in fact belong to that customer. *Id.* at ¶3.

Third, Plaintiff has to jump over the basic Rule 23 hurdles before AmeriCredit can be required to undertake class wide discovery. Plaintiff has not done so.

## II. FACTUAL BACKGROUND

In or about February 19, 2007, Jorge Camacho submitted an Application Statement to Ford Credit. That Statement included a request for a "Phone Number," which Mr. Camacho listed as 773-XXX-0323 ("Number at Issue"). Mr. Camacho's account was transferred to AmeriCredit. Mr. Camacho became delinquent on his payments and AmeriCredit attempted to contact him to collect on his account. On information and belief, the number formerly belonging to Mr. Camacho was reassigned by T-Mobile as a cellular telephone number to Plaintiff. As alleged by Plaintiff, AmeriCredit "called plaintiff's cellular telephone number approximately forty times; approximately three of which were placed after AmeriCredit received plaintiff's cease and desist letter." *See* Motion to Compel at 2, Doc. #22, at 2. As further alleged by Plaintiff, on or about December 5, 2011, she sent a letter to AmeriCredit asking that it cease calling her cellular telephone. *See* Complaint, Doc. #1, at ¶ 11. AmeriCredit has no record of having received this letter.

3

LIBA/2298681.1

On February 8, 2012 Plaintiff served its First Discovery Requests to AmeriCredit. *See* Exhibit A to Plaintiff's Motion to Compel. AmeriCredit served its responses on March 12, 2012 and supplemented its Interrogatory Responses on April 13, 2012. *See* Exhibits B and E to Plaintiff's Motion to Compel.

### III. ARGUMENT

**A.  Plaintiff Cannot Shift the Burden to AmeriCredit to Produce a "Class List," Which Is Not Ascertainable**

Plaintiff's class definition is not supportable and her request for a "class list" is prohibitively burdensome. Plaintiff's class definition consists of the following:

> All persons who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention and/or using an artificial or prerecorded voice, where defendant obtained the phone number it called through some source other than directly from the called party . . . .

As described above, it is AmeriCredit's custom and practice to only call cell phone numbers that were properly obtained through customer loan financing documents or other customer information. Thus, it is not possible to provide a "class list" relating to numbers that AmeriCredit would have obtained "through some source other than directly from the called party." In this case, AmeriCredit only knew of Plaintiff's assertion that her number was improperly dialed because she filed the instant action. There is simply no class of similarly situated individuals that could be discovered.

Likewise, Plaintiff's subclass consists of "persons defendant continued to call *after* it had received notice that it was calling the wrong person, a demand to stop calling or both." Because the class is not ascertainable, it is also not possible to ascertain the subclass. Taking the instant case as an example, and as described above, Plaintiff alleges that she sent AmeriCredit a letter asking that it stop calling the Number at Issue. Yet, even if the letter was sent and received,

4

because Plaintiff is not an AmeriCredit customer, it had no account or file to which it could attach the letter. *See* Affidavit at ¶5. Thus, even if AmeriCredit were tasked with reviewing all of its more than 1 million active accounts to create a "subclass list," absent the instant Complaint, it would not have been able to identify the Plaintiff.

Plaintiff's discovery requests are even more amorphous than her class definition. For instance, Plaintiff's Fourth Interrogatory Request asks AmeriCredit to identify every telephone call to every person within Illinois, Indiana and Wisconsin where "you or some person on your behalf called . . . their cell phone using a predictive dialer, where you obtained the telephone number from some source other than the called party . . . ." As described above, AmeriCredit's files reflect phone numbers that were properly obtained from its customers, not third party sources. No amount of discovery would reveal the requested information. Moreover, searching more than 1 million accounts for this information, which is not ascertainable in the first instance, would be prohibitively burdensome. *See* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."); *Schauf v. Mortg. Bankers Serv. Corp.*, No. 01-4442, 2001 WL 1654711, at *1 (N.D. Ill. Dec. 20, 2001) (finding discovery request that would require individual review of over 300 loan files involving approximately 80 hours of work "overly broad and unduly burdensome" and granting motion for a protective to preclude "fishing through . . . files for class members."); *Martinet v. Spherion Atlantic Enter., LLC,* No. 07-2178, 2008 WL 2557490, at *2 (S.D. Cal. June 23, 2008) (denying motion to compel where plaintiff failed to demonstrate good cause for state-wide discovery to merit the undue burden of discovery into roughly 10,000 non-exempt employees); *Diehl v. Bank of Am. Corp,* No. 09-1220, 2010 WL 3340565, at *2 (M.D. Fla. Aug. 23, 2010) (denying motion to compel "highly specific

information for 250 employees" in discrimination class action, in part because request was "overly broad and unduly burdensome").

The cases cited by Plaintiff for the proposition that AmeriCredit must produce class lists before a class has been certified are easily distinguishable. In *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981), the court's inquiry was not whether class discovery was proper, but whether the parties' abuse of discovery procedures should have resulted in the trial court's dismissal of plaintiff's complaint. Likewise, in *Dillon v. Bay City Construction Co.,* 512 F.2d 801 (5th Cir. 1975), the issue was whether the trial court erred in forcing the parties to proceed with expedited discovery both on the merits and class issues because the plaintiff was seeking preliminary injunctive relief. The court held that the trial court erred in expediting the trial on the merits because doing so inhibited the extensive discovery and investigation required for both the merits and class certification. The case had nothing to do with the issues at hand. Further, in *Pittman n. E.I. DuPont*, 552 F.2d 149 (5th Cir. 1977), the court affirmed the trial court's denial of a plaintiff's motion to compel discovery in a Title VII class action. In *Pittman*, the court agreed with the trial court that the plaintiff's attempted discovery was "overly broad, unduly burdensome and appear to be an abuse of the discovery process." *See also Parker v. Risk Management Alternatives, Inc.* 206 F.R.D. 211 (N.D. Il 2002) (court decides motion for class certification notwithstanding defendant's request for discovery); *Morris v. Risk Management Alternatives, Inc.*, 203 F.R.D. 336 (N.D. Il 2001) ( court decides motion for class certification notwithstanding defendant's request for discovery); *National Organization of Women v. Sperry Rand Corporation*, 88 F.R.D. 272 (D. Conn.1980) (court grants motion to compel discovery in class action, but grants defendant's request the substantially limit the scope and breadth of requested discovery); *Ottenheimer Fund, Inc. v.*

6

*Sanders*, 437 U.S. 340, 98 S.Ct. 2380 (1978) (case did not address whether discovery was proper to determine a class certification issue; rather the Court held that it was in a trial court's discretion to determine pre-certification issues under Rule 23).

**B.     Plaintiff's Request for Class Discovery is Unduly Burdensome.  Plaintiff Has Not Demonstrated a *Prima Facie* Showing of Rule 23 Class Certification Requirements**

Here, Plaintiff improperly seeks to shift her entire burden on class certification to AmeriCredit, demanding that AmeriCredit provide any and all information necessary for Plaintiff to create a class:  "[T]he first category of information plaintiff seeks *is a class list and records of calls, or information that will lead to creation of such* . . . ."; "a straightforward response to this interrogatory *could provide a roadmap for categories of class members* . . . ." *See* Motion to Compel at p. 5; p.8, fn.3.  Even if there were grounds for certifying a class in this case, which there are not, it is Plaintiff's burden to establish that such a class exists.  *See Oshana v. Coca Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

Because Plaintiff has failed to demonstrate a *prima facie* showing of Rule 23 requirements, she is precluded from seeking discovery regarding unnamed class members.  Plaintiffs seeking discovery to "aid the determination of whether a class action is maintainable" bear the burden of first (i) "advancing a *prima facie* showing that the class action requirements of [Rule 23] are satisfied" or (ii) showing that "discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985) (italics added); *see also Williams v. Veolia Transp. Servs., Inc.*, No. 08-2582, 2008 WL 7389430, at *1-*2 (C.D. Cal. Dec. 17, 2008) (denying motion to compel where plaintiffs failed to "make a *prima facie* showing the class action requirements of [Rule 23 were] satisfied" among existing named plaintiffs) (italics added); *Flanigan v. Am. Fin. Sys. of Georgia,* 72 F.R.D. 563, 563 (M.D. Ga. 1976) ("As this complaint now stands plaintiffs do not demonstrate that they in any way satisfy

7

the basic requirements of Rule 23. Until they do they may not engage in discovery for the purpose of 'digging up' information to satisfy Rule 23.").

### C. AmeriCredit's Affirmative Defense Concerning Prior Express Consent is Properly Asserted

AmeriCredit's assertion of consent as an affirmative defense should not legitimize Plaintiff's improper discovery requests. AmeriCredit's Fifteenth Affirmative Defense states: "Plaintiff's claims are barred, in whole or in part, because ***Plaintiff*** consented to the alleged telephone calls within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*." (Emphasis added). This defense is properly asserted as to the Plaintiff. As described above, AmeriCredit cannot be expected to provide discovery on the issue of consent for unidentified and unascertainable members of the putative class.

Moreover, Plaintiff incorrectly assumes that AmeriCredit's failure to provide class discovery on the issue of consent is based on a strategic refusal to do so, rather than the inability to do so. Plaintiff anticipates that "AmeriCredit is expected to argue that the mere *possibility* that some class members may have consented to receive calls precludes certification." *See* Motion to Compel at 10. This argument highlights the absurdity of Plaintiff's class wide discovery requests. It is AmeriCredit's position that it only calls numbers that it properly obtained *with consent*. It is also AmeriCredit's position that, as with the Plaintiff, it has no means for ascertaining individuals that were called without consent absent the filing of a formal grievance.

### D. AmeriCredit's Discovery Responses Are Sufficient

AmeriCredit has complied with its obligations and properly responded to Plaintiff's discovery requests. In her Motion to Compel, Plaintiff takes issue with the following requests:

8

<u>Class Action Discovery Requests: Interrogatory Nos. 4-9 and Document Request Nos. 2-3</u>: These discovery requests relate to class wide discovery and prior express consent and are addressed above. The interrogatory requests concern the following:

<u>Interrogatory No. 4</u>: **Identify each telephone call to each of the following set of persons: Persons with Illinois, Indiana and Wisconsin area code telephone numbers, who you or some person on your behalf called on their cell phone using a predictive dialer, where you made at least one such call after you had been notified that you were calling the wrong person, or had received a demand to stop calling, where any call happened on or after December 20, 2007.**

For the reasons stated above, Plaintiff has not met her preliminary class discovery burden. Moreover and as described above, this information is not ascertainable. *See* Affidavit at ¶3. Likewise, Request for Production No. 3 asks for documents responsive to these interrogatories, which for the reasons stated above, cannot be produced.

<u>Request for Production No. 2</u>: **All documents that support or refute any affirmative defense in this case or relating to prior express consent to receive calls made with an automatic telephone dialing system or prerecorded or artificial voice, for each class member including plaintiff.**

In response, AmeriCredit reasonably agreed to produce documents relevant to any or all of its affirmative defenses in this case but refused to provide documents relating to the putative class. Again, AmeriCredit is able to and has agreed to provide information relating to the named Plaintiff. It has not and cannot produce information regarding members of an uncertified, unidentifiable class.

<u>Policies for Obtaining Telephone Numbers: Interrogatory No. 2, Request for Production No. 5</u>: Contrary to Plaintiff's contention that "AmeriCredit refused to provide any information about where it obtains telephone numbers it calls," AmeriCredit provided information specific to Plaintiff and produced the requested policies.

<u>Interrogatory No.</u> 2: **Identify all sources from which you may obtain telephone numbers that may become associated with any particular account, and any policy, practice or procedure relating to such. Some likely examples may be: directly from the consumer, skip trace, incoming call ANI, cross-referencing with other accounts of the same consumer or accounts with same address).**

In response, AmeriCredit advanced general and specific objections and stated that it obtained the Number at Issue from "the credit application of an AmeriCredit customer." For the reasons stated above, AmeriCredit should not have to provide class discovery information in response to this Interrogatory. This information would not even support Plaintiff's class certification because it would not demonstrate numbers called that were "obtained … through some source other than directly from the called party . . . ."

<u>Request for Production No. 5</u>: **All documents that show policies, practices or procedures for obtaining telephone numbers to contact allegedly delinquent customers.** AmeriCredit agreed to produce and did produce documents responsive to this request. Specifically, AmeriCredit produced the following documents: (1) General Collection Practices, effective May 14, 2009, AC-MACK 000098-105; (2) General Collection Practices, published June 1, 2000, AC-MACK 000106-116; and (3) Account Modifications policy, effective July 23, 2010, AC-MACK 000117126. *See* Affidavit of Naomi B. Spector in Support of Defendant AmeriCredit's Opposition to the Motion to Compel, dated April 30, 2012 ("Spector Affidavit").

Information Concerning Dialers: Interrogatory Nos. 3,10 and 11:

Plaintiff again seeks to mislead the Court regarding the information provided by AmeriCredit with respect to dialer information. Contrary to Plaintiff's assertions, AmeriCredit agreed to provide and has provided complete information concerning dialers used to call the Number at Issue.

Interrogatory No. 3: **Identify all of your dialers. Include the make, model, physical location, how they are used, and whether they were used to call either plaintiff's cellular telephone number or any number associated with them or Julie Mack.** In addition to general and specific objections, AmeriCredit responded: "[P]ursuant to Fed. R. Civ. P. 33(d), AmeriCredit refers Plaintiff to the documents relating to the equipment used to place calls to [the Number at Issue], which will be produced pursuant to the terms of a mutually agreeable protective order." AmeriCredit produced numerous spreadsheets containing dialer information, including: (1) AmeriCredit Financial Services, Inc. dialer history, AC-MACK 000005-84; (2) LiveVox call log, AC-MACK 000085; (3) EPRO MediaDataDetail Results, AC-MACK 000086; (4) Artiva Workstation printouts, AC-MACK 000087-97; and (5) Insurex, Inc. call summary, AC-MACK 000127-128. *See* Spector Affidavit.[2]

Interrogatory No. 10: **Identify and explain all policies, practices and procedures regarding use of automatic dialing systems, prerecorded voice messages and artificial voice messages and the complete history of each, including but not limited to honoring cease and desist demands and obtaining telephone numbers from sources other than consumers. Please cite to bates numbers, include a detailed description of policy, practices or**

---

[2] On April 24, 2012, counsel for AmeriCredit received an email from Plaintiff's stating that AC-MACK 000127-128 "strongly suggests that there may have been another dialer, perhaps a Guaranteed Contracts and/or Ontario Systems GC dialer, which called plaintiff's phone number on at least April 13, 2011." Counsel for AmeriCredit has been

11

**procedure the date it was first considered, the date it was implemented and ceased, all persons involved in its consideration, implementation and, if applicable, termination. Please respond to this interrogatory without regard to time; in other words, disregard the timeframe set forth in the instructions for these requests. If any policy, practice or procedure changed over time, please explain the changes, and provide a timeline for such.**

In addition to specific objections, AmeriCredit stated "pursuant to Fed. R. Civ. P. 33(d), AmeriCredit refers Plaintiff to the policy documents which will be produced pursuant to the terms of a mutually agreeable protective order." As described above in response to Request for Production No. 5, AmeriCredit produced numerous policies relating to the use of dialers to call customers.

Interrogatory No. 11: **Identify all persons (including any third party) and departments involved with use or implementation of your Dialer or use of Prerecorded or artificial voice messages. A complete response would include, for example, your communications manager, dialer specialists, any supplier of Dialer software or hardware (e.g. Qwest or Aspect), any person that makes or made calls on your behalf during the class period (i.e. Soundbite or Livevox), your phone company, and any person that supplied voice message services. Include the name, work location, job title, job description and describe all Electronically Stored Information concerning that person, as to dialers and recorded messages, that exists.**

In addition to asserting general and specific objections, AmeriCredit stated: "AmeriCredit identifies the following individuals: Bob Beatty, SVP Corporate Servicing, Sue Macfarlane, AVP Dialer Operations III, Craig Paterson, VP Special Accounts. Further responding,

---

trying try to ascertain this information. However, it is not readily apparent from the face of the document and requires obtaining additional information from a third party. *See* Spector. Affidavit.

LIBA/2298681.1

AmeriCredit states that it lacks knowledge or information sufficient to identify responsive persons at Livevox, which is a third party that is unrelated to AmeriCredit." In its Motion to Compel, Plaintiff lists a litany of deficiencies with this response, which have nothing to do with the question asked. Strangely, Plaintiff bemoans the fact that AmeriCredit only mentions LiveVox and does not provide detailed information concerning EPRO, concluding that "it is apparent that AmeriCredit is hiding the ball." Nowhere in Plaintiff's Interrogatory No. 11 did she ask for detailed information related to LiveVox or EPRO. Such information should have been specifically requested, or is the proper subject of deposition.

**E. Under the Guise of Willfulness, Plaintiff Implausibly Asks that AmeriCredit Prove that it Violated the TCPA**

Plaintiff's requests relating to willfulness are yet another example of Plaintiff's improper attempt to shift the burden to prove her case to AmeriCredit. As stated in its discovery responses, AmeriCredit does not have documents responsive to many of these requests in its custody, possession or control. Moreover, AmeriCredit will not produce information discussing the legality of its practices or compliance with the TCPA. As stated in its specific objections, such requests are improper, call for legal conclusions and seek protected information.

Request for Production No. 8: **A copy of any sworn testimony relating to your dialers, or policies, practices or procedures relating to the use of dialers. A full response would include, for example, deposition testimony, declarations and affidavits.**
In addition to asserting general and specific objections, AmeriCredit responded that "there are no documents responsive to this Request in AmeriCredit's custody, possession, or control." AmeriCredit stands on this response. Plaintiff's attempt to transmute a response that no documents exist into something "apparently false" is improper.

13

Request for Production No. 9: **A copy of any complaint (formal or informal), all supporting and internal documentation and your response, you or your attorneys have ever received that complains about calls using your Predictive Dialer and Prerecorded Messages, without regard to date.**

In addition to asserting general and specific objections, AmeriCredit responded that it "is not aware of any documents responsive to this Request in its custody, possession, or control." Upon clarification by Plaintiff's counsel, AmeriCredit stated by letter response that information regarding public complaints is "equally available to and of no greater burden for plaintiff to obtain. Notwithstanding, AmeriCredit identifies the action currently pending in the U.S. District Court for the Southern District of California, *Newman v. AmeriCredit Financial Services, Inc.*, Case No. 11-CV-3041." *See* Exhibit D to Plaintiff's Motion to Compel. Any failure to initially provide this information was unintentional and merely due to AmeriCredit's misunderstanding concerning the scope of the request – not gamesmanship.

Request for Production No. 10: **All documents from any source that concern the legality or propriety of making telephone calls to debtors using your Predictive Dialer, Prerecorded Message, an autodialer or a prerecorded or artificial voice.**

Request for Production No. 11: **All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Telephone Consumer Protection Act.**

Among other things, AmeriCredit objected to each of these requests "because it seeks documents (1) that are not relevant to Plaintiff's individual claims or AmeriCredit's defenses; (2) concerning matters beyond the scope of the allegations in the Complaint relating to Plaintiff's individual claims; and (3) which are confidential or proprietary in nature, or which otherwise

14

constitute AmeriCredit's protected commercial, financial, competitively sensitive, and/or trade secret information. AmeriCredit also objects to this Interrogatory as improper, overly broad, unduly burdensome . . . [and] to the extent that it seeks information protected from discovery by the attorney-client privilege, the work product doctrine, the critical self-analysis privilege, or any other applicable privileges or reasons for non-production."

AmeriCredit stands on these objections and has not waived any privilege. *See* Fed. R. Civ. Proc. 26(b)(3)(A); *In re County of* Eerie, 546 F.3d 222, 228 (2d Cir. 2008) ("The attorney-client privilege is one of the 'oldest recognized privileges for confidential communications . . . . Its purpose is to 'encourage full and frank communications between attorneys and their clients . . . .") (internal citations omitted); *Hickman v. Taylor*, 329 U.S. 495, 513 (1947) ("But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order."). The attorney-client privilege and work product doctrine are afforded strict protection and cannot be waived by merely failing to produce a privilege log or denying a claim. *See, e.g., Weiss v. Nat'l Westminister Bank, PLC,* 2008 WL 5115027, at *2 (E.D.N.Y. Dec. 3, 2008) (denying motion to compel based on an alleged at-issue waiver and noting that "much of what plaintiff's claim support a finding of implied waiver is based on conjecture . . . ."); *Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*, 2006 WL 2807187, at *6 (S.D.N.Y. Sept. 27, 2006) ("To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations.").

Furthermore, AmeriCredit has only minimally redacted two documents and has not withheld a single document on the basis of privilege. But, to alleviate any concern that

15

AmeriCredit might be withholding or otherwise relying on privileged information, AmeriCredit will provide a privilege log to Plaintiff's counsel concurrent with its service of this Opposition.

Request for Production No. 12: **All organizational charts of defendant showing personnel.** AmeriCredit will provide a limited organizational chart to Plaintiff's counsel concurrent with its service of this Opposition.

### F. AmeriCredit Has Preserved and Stands On Its General Objections and Cannot Be Found to Have Waived Any Privilege

In addition to asserting General Objections, for each discovery request, AmeriCredit asserted specific objections detailing why the requested information could not properly be obtained by Plaintiff. These objections were properly asserted and have not been waived. Moreover, and as described above, AmeriCredit has not waived any privilege or protection, nor has it placed any protected information "at issue." As such, the attorney-client privilege and work-product protection should be strictly upheld.

### IV. CONCLUSION

Based on the foregoing, AmeriCredit respectfully request that Plaintiff's Motion to Compel be denied in its entirety.

Dated: May 1, 2012                                    Respectfully submitted,

                                                 By:  /s/ Chad R. Fuller
                                                     Chad R. Fuller
                                                     *cfuller@goodwinprocter.com*
                                                     Naomi B. Spector
                                                     *nspecter@goodwinprocter.com*
                                                     **GOODWIN PROCTER LLP**
                                                     4365 Executive Drive
                                                     San Diego, California  92121
                                                     Tel.: 858.202.2700
                                                     Fax: 858.457.1255

                                           *Attorneys for General Motors Financial*
                                            *Company, Inc., Defendant*

## CERTIFICATE OF SERVICE

      The undersigned hereby certified that a true and correct copy of the above and foregoing document has been served on April 30, 2012, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

                                              /s/ Chad R. Fuller
                                              Chad R. Fuller