UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY MACK on behalf of herself and others similarly situated, | ) ) ) |
| | ) Civil Action No. 1:11-cv-9008 |
| Plaintiffs, | ) ) Judge Kim (by consent) |
| v. | ) ) |
| GENERAL MOTORS FINANCIAL COMPANY, INC. f/k/a AMERICREDIT CORP., | ) ) JURY DEMANDED ) ) |
| Defendant. | ) ) |

## DEFENDANT'S SUR-REPLY TO PLAINTIFF'S MOTION TO COMPEL

Defendant General Motors Financial Company, Inc. f/k/a AmeriCredit Corp. ("AmeriCredit") hereby submits its Sur-Reply to Plaintiff's Motion to Compel, filed on April 16, 2012. This Sur-Reply addresses the following issues raised during the May 8, 2012 hearing on Plaintiff's Motion to Compel:

1. <u>The Statements in the Kinley Affidavit are Accurate</u>: The statements contained in the Affidavit of Kyle Kinley in Support of Defendant's Opposition to Plaintiff's Motion to Compel, dated April 30, 2012 ("Kinley Affidavit"), are accurate. Specifically, it is AmeriCredit's policy to only dial cell phone numbers that were obtained with consent from a customer.[1] Notwithstanding this policy, AmeriCredit's practices were not complied with in this instance.

---

[1] Based on the claims alleged, this statement presupposes that the cell phone numbers are dialed using automated equipment.

2303657

2. <u>Class Discovery Should be Limited and Phased</u>: The discovery sought by Plaintiff is overbroad and extremely burdensome. If the Court permits class discovery, it should limit it to individuals who, like Plaintiff, are not AmeriCredit customers and whose cell phone numbers, while originally provided by an AmeriCredit customer, were subsequently dialed by mistake. The Court should also limit initial discovery to class certification.

3. <u>This Case Should Be Stayed or Consolidated With a Parallel Class Action</u>: Pursuant to the May 17, 2012 telephonic status conference, the parties are working towards agreement on a settlement framework. Settlement discussions may include consideration of a parallel, nationwide class action that is pending in the Southern District of California. In the event the parties do not reach a compromise or settlement, AmeriCredit intends to move to stay or consolidate this case with the Ninth Circuit action.

## I. ARGUMENT

**A. The Information Concerning AmeriCredit's Policies in the Kinley Affidavit Is Correct, But A Mistake Was Made in Contravention of those Policies**

The policy described in the Kinley Affidavit is correctly stated: "It is AmeriCredit's custom and practice to only call cell phone numbers that were provided by customers through loan financing documents or other customer information." *See* Kinley Affidavit, ¶2. Specifically, as provided in AmeriCredit's Account Modifications Policy, dated July 23, 2010, attached as Exhibit F to Plaintiff's In Camera Reply, Docket No. 34 ("Exhibit F"), at AC-MACK 000122: "Any team member who receives a verbal request for a telephone number/home address modification must confirm that the person making the request is the person listed as the buyer or co-buyer on the account in accordance with the Account Verification policy." Notwithstanding this policy, it appears that a third-party vendor and AmeriCredit employee acted in contravention of AmeriCredit's mandate.

First, Insurex, an independent third party vendor, appears to have performed a "skip trace" and potentially updated the account with 773-577-1012 ("New Cell Number") as a result of that trace.[2] *See* Exhibit F at 000127-128. In her Reply to the Motion to Compel, Plaintiff asserts that "[w]homever received the robocalls from AmeriCredit/Insurex on the 1012 cellular telephone number is a class member, because . . . the phone number was obtained from a source other than the debtor." *See* Plaintiff's Reply in Support of Motion to Compel ("Reply"), at 6. This cannot be the case and demonstrates the overbreadth of the purported class. The owner of the New Cell Number was Mr. Camacho, the debtor on the account who originally provided the 773-XXX-0232 number ("Number at Issue") to AmeriCredit. Plaintiff admits this fact in her Reply. *See* Reply at 6 ("Ameri[C]redit had already linked the 1012 number with Mr. Camacho by April 2011."). Mr. Camacho stands in a wholly different position than Plaintiff. Among other things, Mr. Camacho is subject to a creditor/debtor relationship whereby, in breach of his agreement with AmeriCredit, he became delinquent on his account. Such a relationship gives rise to legal rights and remedies, including pursuant to claims of fraudulent transfer and breach of contract. Mr. Camacho also initially consented to be contacted by AmeriCredit on his cell phone number and subsequently, without notice to AmeriCredit, changed his cell phone number.

Second, it appears that an AmeriCredit employee traced the Number at Issue and, in contravention of AmeriCredit's Policy, changed the customer's cell phone number in AmeriCredit's file without first obtaining confirmation from the customer that the New Cell Number was accurate. *See* Exhibit F at AC-MACK 00044 (showing on 6/16/2009 at 12:04 new address and mobile phone information, which was added to the account as the buyer's new phone number on 6/16/2008 at 12:05). AmeriCredit subsequently spoke with the customer and

---

[2] "Skip trace" means to conduct research regarding a phone number, such as a "Google" search.

3

verified the New Cell Number. *See* Exhibit F at AC-MACK 000032 (showing on 8/19/2008 at 19:38 that the buyer verified himself).

As described in the Kinley Affidavit, AmeriCredit has more than 1 million active customer accounts. *See* Kinley Affidavit ¶4. With such a large number of accounts and high volume of calls, mistakes happen. Although AmeriCredit has stated policies about dialing cell phone numbers, and makes every effort to ensure that its employees comply with those policies, in this instance it appears that the policies were not followed.

**B.   If the Court Grants Plaintiff's Motion to Compel, Class Discovery Should be Limited and Phased**

If the Court grants Plaintiff's Motion, class discovery should be limited to: (1) individuals who are similarly situated to Plaintiff, and (2) certification issues. As described in detail in Defendant's Opposition to Plaintiff's Motion to Compel ("Opposition"), Plaintiff should be required to meet her basic Rule 23 obligations before the Court authorizes class discovery. If, however, discovery proceeds, it should be narrowly tailored and phased.

**1.   The Class Must Be Narrowly Tailored**

Plaintiff cannot properly represent the broadly defined class, which includes: "All persons who defendant or some person on its behalf called on their cell phone using a device that has the capacity to dial numbers without human intervention and/or using an artificial or prerecorded voice, where defendant obtained the phone number it called through some source other than directly from the called party . . . ." *See* Complaint ¶21.

Parsing this class definition reveals that Plaintiff is not a proper representative.

- "All persons who defendant or some person on its behalf called on their cell phone": Plaintiff is not an AmeriCredit customer and cannot represent a class of persons who are or were customers of AmeriCredit. AmeriCredit customers stand in a different analytical

4

framework due to the creditor/debtor relationship and its reciprocal rights and duties. Such a relationship simply does not exist with Plaintiff.

- "Using a device that has the capacity to dial numbers without human intervention and/or using an artificial or prerecorded voice": It is AmeriCredit's practice to only dial cell phone numbers that were provided with consent by an AmeriCredit customer. Any cell phone number that was dialed by AmeriCredit without customer consent constitutes a case of mistake. Such mistakes are outliers and are difficult to ascertain.

- "Where defendant obtained the phone number it called through some source other than directly from the called party": Plaintiff's cell phone number was properly obtained from an AmeriCredit customer, but was later reassigned to Plaintiff by a telephone carrier. A reassigned telephone number is difficult to ascertain without notice from the customer or a third-party.

If the Court grants Plaintiff's Motion, class discovery should only proceed as to purported members that are ascertainable and typical of Plaintiff's situation and claims. *Soppet v. Enhanced Recovery Co., LLC*, No. 10 C 5469 (May 11, 2012), does not deter this position nor does it speak to class certification issues. *Soppet* affirms what AmeriCredit was already willing to concede – that Plaintiff was called by mistake and without consent.

### 2. Class Discovery Should be Phased

Any class discovery should be phased and initial discovery (Phase I) should be limited to class certification. Phased discovery is appropriate because the class certification question is a threshold issue that should be decided early on in the litigation, as it will determine the scope of the case, promote settlement discussions, and help the parties and Court manage the case most effectively and efficiently. Courts routinely stage class certification discovery before merits

5

2303657

discovery in complex class actions like this one. *See*, *e.g.*, *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312-13 (9th Cir. 1977) (before certification of a class action, discovery is usually limited to certification issues); *Salon Fad v. L'Oreal USA, Inc.*, No. 10-cv-5063, 2011 WL 4089902, at *5 (S.D.N.Y. Sept. 14, 2011); *B.H. ex rel. D.B. v. City of N.Y.*, No. 10-cv-210, 2011 WL 2470619, at *1 (E.D.N.Y. June 20, 2011); *Kreger v. General Steel Corp.*, 2008 U.S. Dist. LEXIS 12568, *3 n.2 (E.D. La. Feb. 15, 2008). Indeed, the Manual for Complex Litigation essentially concludes that staging or phasing discovery is appropriate in most class actions:

> Discovery relevant only to the merits delays the certification decision and may ultimately be unnecessary. Courts often bifurcate discovery between certification issues and those related to the merits of the allegation. Generally, discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof; discovery into the merits pertains to the strength or weaknesses of the claims or defenses and tests whether they are likely to succeed." *Manual for Complex Litigation*, § 21.14 (4th ed. 2006).

Here, discovery on several issues relevant to the merits are not inextricably entwined with certification issues. Plaintiff's theory of liability is predicated on her claim that AmeriCredit called the cellular telephones of Plaintiff and the putative class members using an automatic telephone dialing system ("ATDS") or prerecorded voice, without prior express consent. Among the merits issues that the theory implicates are proof that (a) the numbers AmeriCredit called were assigned to cellular telephones; (b) AmeriCredit used an ATDS or prerecorded voice to make calls to cellular telephones; (c) AmeriCredit did not have prior express consent to place those calls; (d) AmeriCredit knew that the telephone numbers it was calling were assigned to cellular telephone services; and (e) the claims of Plaintiff and the putative class members are not subject to binding arbitration. Even if these individuals could be identified, addressing these questions would require a review of each customer file to whom AmeriCredit placed calls during the purported class period. Such a review would be prohibitively burdensome. *See* Kinley

Affidavit at ¶4 ("Conservatively . . . it would take one person 16,666 hours to conduct a review [of the accounts at issue], or 1.9 years."). *See* Manual for Complex Litigation § 21.14 ("in cases that are unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification delays the certification decision and can create extraordinary and unnecessary expense and burden").

By contrast, the class certification question does not implicate whether Plaintiff's theories are correct. Rather, the class certification question concerns only whether Plaintiff could prove his theories with uniform evidence on a class-wide basis, and whether Plaintiff's claims are representative of those of the class. Phasing discovery to first provide for Phase I Discovery into class certification issues and Plaintiff's individual claims will enable the parties to focus their efforts, as the Manual for Complex Litigation advises, on issues that go to the threshold class question this Court must face, and will promote the early and efficient resolution of class issues contemplated by Fed. R. Civ. P. 23(c)(1).

**C.     This Court Has The Power to Stay Or Otherwise Consolidate This Action**

In its equitable discretion, this Court has the power to stay or otherwise consolidate this action with a parallel, nationwide class action brought in the Ninth Circuit in *Newman v. AmeriCredit Financial Services, Inc.*, No. 11-CV-3041 DMS NLS. The *Neman* case was filed on December 29, 2011, nine days after this action, and alleges that AmeriCredit violated the Telephone Consumer Protection Act by calling the plaintiff, who is not an AmeriCredit customer, on her cell phone without consent. The instant case and *Newman* share near-identical claims, parties and requests for relief. Moreover, because *Newman* alleges a nationwide class, the claims and relief sought in this action would be subsumed by that case. To avoid duplication of effort and waste of resources, this Court has discretion to stay, dismiss or consolidate this

7

action. *See e.g.*, *Landis v. N. American Co.*, 299 U.S. 248 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Askin v. The Quaker Oats Co.*, 2012 U.S. Dist. LEXIS 18665 (N.D. Ill. Feb. 15, 2012) (J. Kim) (staying a class action case where the class, claims and relief sought were the same as those pending in a consolidated action in California ); *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 14121, at *13-14 (N.D. Ill. Feb. 20, 2008) (staying federal court class action in light of possible state-class action settlement given that "the state court's approval of the settlement will have a substantial effect on some or all of Plaintiffs' claims before" the federal court).

 Pursuant to the settlement framework discussed during the May 17, 2012 status conference, AmeriCredit intends to raise the consolidation or stay issue with Plaintiff's counsel. In the event that settlement discussions are not productive, AmeriCredit will formally move the Court to stay or consolidate the duplicative actions.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II. CONCLUSION

Based on the foregoing, AmeriCredit respectfully request that Plaintiff's Motion to Compel be denied in its entirety. In the event the Court grants the Motion, AmeriCredit requests that discovery be narrowly tailored and phased.

Dated: May 22, 2012                                   Respectfully submitted,


                                                      By:  /s/ Chad R. Fuller
                                                         Chad R. Fuller
                                                         *cfuller@goodwinprocter.com*
                                                         Naomi B. Spector
                                                         *nspecter@goodwinprocter.com*
                                                         **GOODWIN PROCTER LLP**
                                                         4365 Executive Drive
                                                         San Diego, California  92121
                                                         Tel.:  858.202.2700
                                                         Fax:  858.457.1255

                                        *Attorneys for General Motors Financial*
                                         *Company, Inc., Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the above and foregoing document has been served on May 22, 2012, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

/s/ Chad R. Fuller
Chad R. Fuller